Oveeton, J.
 

 delivered the following opinion of the Court: —
 
 [1]
 

 On the part of the plaintiffs in error, it is insisted that the gift from Sugg to Hooper and wife is void as against the wife of Sneed, it having been done after the marriage. It is admitted that an administrator has the right to sell the personal property of his intestate, but not to give it away. One, it is contended, is necessary to the execution of the trust reposed by law in the administrator, the other is not. Upon this and other incidental points involved in the discussion the counsel for the plaintiffs have cited 2 Atk. 39; 3 Com. Dig. 252, 264; 1 Fonb. 262, 3; 4 T. E. 621.
 

 Some time after the negroes in question were in possession of the defendants, the administrator Sugg executed a deed conveying them for and in consideration of natural love and affection. The plaintiffs therefore insist that this deed estops the defendants from avering any other consideration, as marriage, etc., and that the gift of the negroes is merely voluntary, and will not displace the rights of the parties. • 3 Com. Dig. 257; 2 Str. 739, 741.
 

 On the part of the defendants two grounds have been taken, 1st, that
 
 *153
 
 the present action is not well conceived, — that it ought to have been an action at common law, and not a petition under the Act of 1762. 2dly, That an administrator has a complete control over the personal property of the intestate, and can give as well as sell property; but that in this case there is a consideration sufficient to validate the contract, as to these ne-groes.
 

 It is believed that the first objection taken by the defendants is not sustainable. The mode of redress contemplated by the Act of 1762 is to all intents and purposes a chancery proceeding ; and the principles which have obtained in courts of equity, will with equal reason apply in this case. It is insisted that suits by orphans can only be brought against guardians, executors and administrators, agreeably to the Act before mentioned; and that the defendants do not hold these negroes in any of the above characters. Suppose this were the case, which is not conceded, still the action would not be affected. The bill charges, and it is prosecuted on that idea, that the defendants are guardians. If the answer set up a claim to the property in dispute on other and distinct grounds from that charged in the bill, no reason can be perceived why the plaintiffs should not have relief, provided they make a case which entitles them to it. It is not reasonable to presume that an orphan or his
 
 frochein amy,
 
 in all cases, will be able to tell what defence a guardian will set up; and it would be attended with much mischief, if a plaintiff, under such circumstances, were to be turned round to a court of law.
 

 Other positions assumed in this case are principally resolved into the two following propositions: —
 

 1. The abstract power of alienation of executors or administrators over the personal property of deceased persons.
 

 2. Such power considered in relation to third persons,, as creditors, legatees, and distributees.
 

 In relation to the first, the law will be found in Shep. Touch. 94, 339 ; 1 Atk. 463 ; 3 Atk. 235 ; 11 Vin. Abr. 267, pi. 7; 3 Bac. Abr. (Gwil.) 52; 34.
 

 These authorities clearly communicate the idea, that an executor or administrator “ may sell, give away or dispose as he thinks proper of the goods and chattels of the testator or intestate.” The same principle is admitted both by Buller and Grose in the case referred to at the bar. 4 T. R. 632, 638.
 

 It is expressly laid down by Buller, 4 T. R. 636, 7, that claims against executors or administrators in respect of assets in their hands are personal demands at law, but otherwise in a court of equity, which follows the funds or assets, though in other hands. This is not controverted by the other judges and it is believed to be correct.
 

 Considering this then as a question between Sugg, the administrator or
 
 *154
 
 his representatives and the defendants, there is no doubt he would be bound by this gift of the two negroes. He could not claim against his own act and deed, particularly where there was a consideration if not valuable at least good.
 

 2. Does the interest which the wife of Sneed had in the negroes vary the case ? Neither legatees nor distributees acquire any property in the goods of the deceased until the assent of the executor or administrator is given. 3 Bac. Abr. (Gwil.) 84. They have only an inchoate right to the surplus after the payment of the debts. It is only a right of action, the property still remaining in the executor or administrator. If through negligence or mismanagement there is a misapplication of the assets it is a devastavit, by which means the executor or administrator become personally liable.
 

 In some cases though there may be a devastavit, a court of equity will follow the assets into the hands of strangers; but I have not been able to find any except those where the executor or administrator was charged to be insolvent, or unless there was fraud or covin with the representative of the deceased to commit a devastavit. In the case of Steddolph against Leigh, 2 Vern. 75, there was a voluntary assignment to the defendant for services performed by him for the use of the executor. The Lord Chancellor observed that “he was satisfied Leigh well deserved the reward,” ordered an account to be taken of the executor’s estate, and declared if there were sufficient assets of the executor’s who was dead the assignment-should stand good. The bill expressly charged that there was not suflficent assets of the first testator.
 

 In this case there certainly is what the law calls a good consideration. The petition states the defendant Elizabeth Hooper to be the daughter of the administrator of Deloach, and that she intermarried with the defendant Joseph Hooper. The case is bottomed on the idea that it is proper to follow the assets of Deloach in the hands of the defendants who claim to hold them, not as guardians, but in right of marriage. Neither fraud nor covin has been proved; nor is it presumable from the nature or circumstances of the transaction.
 

 In the case of Mead against Lord Orrery and al., 3 Atk. 235, Lord Hardwicke says, alienations by executors or administrators, are good at law unless there be collusion. That was a case of the assignment of [205] a mortgage of a term by the executors. He observed it was the first attempt he had ever known by residuary legatees to follow assets into the hands of third persons; and in the conclusion of the case he expressly says “ there is no pretence to set aside this assignment, as the executors had the legal right, and there is no color of fraud.”
 

 The opinion of Lord Mansfield in the case of Whale
 
 v.
 
 Booth, 4 T. It. 625, is highly illustrative of the cause before the Court. The general rule
 
 *155
 
 both of law and equity is clear, that an executor may dispose of the assets of the testator; that over them he has an absolute power, and that they cannot be followed by the testators’ creditors, &c. There is one exception, indeed, where a contrivance appears between the purchaser and executor to make a devastavit.
 

 No contrivance or collusion has appeared between Hooper and the administrator, Sugg. The defendant might reasonably have calculated on some portion with his wife; it was usual, and founded on moral obligations. It does not appear that he received anything with her of consequence, except these two negroes, Nan and Bess; nor does it appear that he knew before the bill of sale that they ever belonged to the estate of Samuel De-loach. And, according to the opinion of Lord Mansfield in the case before mentioned of Whale and Booth, it is at least questionable whether such notice, if it existed, would have affected him.
 

 • There certainly was a good though not a valuable consideration for these two negroes. The transfer was made
 
 hona fide,
 
 and untainted with anything like fraud or contrivance.
 

 Upon what ground, then, can a court of equity set it aside in favor of a distributee ? Had it appeared in the petition and proofs that the administrator and his securities were insolvent, I should very much doubt whether these assets could he followed in equity; hut a case of insolvency has not been made either by the petition or proofs. It was upon this ground the Court of King’s Bench went in the case of Farr
 
 v.
 
 Newman, 4 T. R. 621, referred to at the bar.
 

 Mere voluntary gifts by an administrator, without any consideration, are certainly voidable as against third persons, where there is a deficiency of assets. In such cases the law would presume fraud or a contrivance to commit a devastavit. In many cases they would be void, though there might be assets. But, with Mr. Justice Buller, I agree that the demands of creditors, distributees, and residuary legatees, are personal against' the executor or administrator. If they misapply the assets, over which they have an absolute power of alienation, they commit a devastavit and render their own proper goods liable. In general, third persons cannot come into equity against strangers who have purchased of such executor or administrator, unless there be proof of fraud or contrivance on the part of the purchaser. There is no such proof against the defendant Hooper.
 

 The consideration of marriage may be proved ; it is consistent with the consideration expressed in the deed. Considerations are said to be consistent when, according to the usual mode of transacting business, they agree; consistent facts, and not consequences, are to be adverted to. In the bill of sale the consideration is natural love and affection, the proof is that the ne-groes were delivered as a marriage portion to the daughter. Agreeably to
 
 *156
 
 the character of the human mind, natural love and affection arise from the marriage and relation in which the woman stood to the donor.
 

 The Act of 1723, ch. 10, has been referred to; but it cannot be perceived that this Act will affect the case before the Court, it being directory only. The powers of executors and administrators in the alienation of the estates of deceased persons remain the same.
 

 Judgment affirmed.
 

 [1]
 

 Obigikai, Note. — Absent White, J.